IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  6:10-CV-362 |
| | § | |
| PANOLA COUNTY, TEXAS *et al.* | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

This is a 42 U.S.C. § 1983 case.  Currently pending before this Court are Defendants' Motion for Summary Judgment ("Motion")(doc. #22) and Plaintiff's Motion for Partial Summary Judgment (doc. #32).  Plaintiff filed a response opposing the Motion (doc. #24).  Defendants filed a Reply to Plaintiffs Response to the Motion (doc. #29).  Plaintiff then filed a Motion for Partial Summary Judgment (doc. #32).  Defendants filed a response opposing Plaintiff's Motion for Partial Summary Judgment (doc. #35).  Plaintiff filed his Rely to Defendant's Response opposing Plaintiff's  Motion for Partial Summary Judgment (doc. #37).  Defendants then filed their Sur-Reply (doc. #38).  After considering the Plaintiff's Amended Complaint, Defendants' Motion, Plaintiff's Motion for Partial Summary Judgment, the Responses, Relies, Sur-Reply, exhibits submitted, and applicable law as stated below, the undersigned recommends granting Defendants' Motion.

*Factual and Procedural Background*

Pro Se Plaintiff, Craig Cunningham, was driving in Panola County at approximately 1:00 a.m. on May 28, 2010.  Thinking he was being followed, Cunningham pulled into a church parking lot.  According to Cunningham, he was approached by John Gradberg, a deputy constable who Cunningham said was in plain clothes.  Officer Gradberg informed Cunningham that his tail light

was out.  Cunningham asserts that Officer Gradberg began asking a series of questions to which Cunningham exercised his "right to remain silent" and thus refused to answer.

In the course of running Cunningham's license, it was discovered that Cunningham had a concealed handgun license.  Officer Gradberg questioned Cunningham about his concealed handgun license.  Cunningham was evasive in his answers and refused to answer Officer Gradberg's questions.  Instead, Cunningham answered questions with questions.  Officer Gradberg felt concerned for his safety and wanted to conduct a search for weapons.  Officer Gradberg called for backup and Sheriff's Deputy Phillip Grimes arrived on the scene.  Deputy Grimes questioned Cunningham about his concealed handgun license.  Cunningham continued to refuse to answer the officers' questions; as a result, a *Terry* search was conducted.  The search revealed no weapons and Cunningham was released.  The stop took approximately thirty minutes.

Cunningham complains that the stop, detention, and search violated his constitutional rights.  He filed suit against defendants Panola County, John Gradberg, Phillip Grimes, Sheriff Jack Ellett, and Constable Mitch Norton.  Plaintiff asserted eight causes of action: (1) civil conspiracy, (2) deliberate indifference and failure to train/supervise against Panola County, (3) deliberate indifference and failure to train/supervise against Jack Ellett and Mitch Norton, (4) violations of Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, (5) assault and battery, (6) sexual assault and battery, (7) false imprisonment, and (8) intentional infliction of emotional distress.

On August 25, 2010, Defendants filed a FED.R.CIV.P. 12 Motion to Dismiss (docket #9).  Cunningham did not file a response.  On October 28, 2010, the undersigned recommended (doc. #16) that Defendants' Motion to Dismiss be granted in part and that the claims against Sheriff Ellett,

Constable Norton, and Panola County be dismissed with prejudice.  Cunningham did not file an objection.  On November 24, 2010, the Honorable Judge Michael H. Schneider signed an Order Adopting the Report and Recommendations (docket #17) of the undersigned.   The case proceeded against the remaining defendants, Deputy Constable John Gradberg and Sheriff Deputy Phillip Grimes ("Officers").

On January 16, 2011, Cunningham filed his First Amended Complaint (doc. #18).   The Amended Complaint named only Deputy Constable John Gradberg and Deputy Sheriff Phillip Grimes as defendants.  The causes of action against Sheriff Ellett, Constable Norton, and Panola County for deliberate indifference and failure to train and supervised were abandoned.

On February 16, 2011, the Officers filed the current Motion.  The Officers contend that Cunningham's civil conspiracy claim fails because the Officers are not required to obtain a supervisor on Cunningham's demand and that Officer Grimes was called to make the search safe, not to further a conspiracy.  As to Cunningham's claims concerning the Fourth, Fifth, and Fourteenth Amendments, the Officers contend that the questions posed to Cunningham were appropriate and constitutional and the duration of the stop is allowed by law.  As to Cunningham's claims for assault and battery, the Officers contend that Cunningham was given a lawful, *Carmouche* search.  The Officers contend that Cunningham's sexual assault and battery claims are ripe for dismissal because a pat-down search is not a sexual assault and battery.  The Officers contend that Cunningham's false imprisonment claim is likewise without merit because the traffic stop lasted for thirty minutes, and the Supreme Court had ruled that a traffic stop of less than 90 minutes is not excessive.  Lastly, the Officers contend that there is no claim for intentional infliction of emotional distress if there is another cause of action that covers the same actions.

Cunningham responded to the Officers' Motion and filed his own Motion for Partial Summary Judgment.  Cunningham stated that the traffic stop violated his rights under the Fourth Amendment.  Particularly, he asserts that the Offices have the burden of proving probable cause for the stop.  Yet, the Officers provided only "self-serving affidavits" that Cunningham's tail light was out and "intentionally disabled their dashboard video cameras" by not turning on their emergency lights and preventing the recording of the event.  Cunningham was carrying a tape recorder and recorded the incident.  He stated "had the Plaintiff not activated a recording device, there would be no record of the encounter at all, which is precisely what the Defendants wanted."  He submitted a transcription of the recording as part of his summary judgment evidence.   In addition, there was no probable cause because the Officers did not cite Cunningham for any traffic violation and he was not arrested.  Cunningham asserts that extending the stop beyond two minutes violates his Fourth Amendment rights.  Further, after a computer check revealed no criminal history for Cunningham, Officer Gradberg should not have detained and questioned him further.   A lack of criminal history should essentially dispel all reasonable suspicion.  However, Officer Gradberg continued to detain Cunningham until the arrival of Officer Grimes who continued the unconstitutional conduct.  Cunningham asserts Officer Grimes likewise did  not have reasonable suspicion to detain, question, and search him.

Cunningham asserts that he has the right to be free from being questioned and that the extended detention, conditioned upon answering the questions, violated his Fifth and Fourteenth Amendment rights.  Specifically, Cunningham asserts that he has the right to remain silent under *Miranda* and the United States Constitution, and he accordingly exercised his rights by "explicitly"

refusing to answer.  He stated that he was "coercively threatened with arrest [and] illegal seizure of [his] pets and vehicle" if he did not answer the Officers' questions.

Cunningham avers that his behavior was normal and he did nothing suspicious.  He stated that he had no obligation to carry or display his concealed handgun license because he was not armed with a handgun at the time of the stop.  Cunningham contends that Officer Gradberg's belief that he was armed and dangerous was unreasonable.  According to the Plaintiff, "[Officer] Gradberg obviously believed that consent was an essential element to conducting a search of [Cunningham], thus he could not have believed that [Cunningham] was armed and dangerous."  That is, seeking consent to search indicates that Officer Gradberg did not believe Cunningham was armed and dangerous because "consent is not required if an officer reasonably believes that an individual is armed and dangerous."  Cunningham further asserts that a reasonable person who fears for his safety would activate his recording equipment to document the encounter.  Here, the Officers did not record the traffic stop.  The search was illegal and improper and was conducted to "harass and humiliate Plaintiff to literally grab him by the balls."  Thus, the questions, detention, and search were unreasonable and lacked probable cause in violation his Fourth, Fifth, and Fourteenth Amendment rights.

*Discussion and Analysis*

## I. Summary Judgment Standard

Rule 56(c) of the FED. R. CIV. P. provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute[1] as to any material fact and the movant is entitled to

---

[1]As amended December 1, 2010.  Per the Advisory Committee Notes on 2010 amendments, Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used

judgment as a matter of law.   The party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion and identifying those portions

of pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).   The moving party, however, "need not negate

the elements of the nonmovant's case."   *Little v. Liquid Air Corp.,* 37 F .3d 1069, 1075 (5th Cir.

1994)(en banc).   The movant's burden is only to point out the absence of evidence supporting the

nonmoving party's case.   *Stults v. Conco, Inc.,* 76 F.3d 651, 655 (5th Cir. 1996).   Once the moving

party makes a properly supported motion for summary judgment, the nonmoving party must look

beyond the pleadings and designate specific facts in the record showing that there is a genuine issue

for trial.   *Id.*   Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the

nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole,

could lead to different factual findings and conclusions.   *Honore v. Douglas*, 833 F.2d 565 (5th Cir.

1987).   The district court must look to the full record, including the pleadings, affidavits, and

depositions.   *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).   Under this standard, fact

questions are considered with deference to the nonmovant.   *Reid v. State  Farm Mutual Automobile

Insurance Co.*, 784 F.2d 577, 578 (5th Cir.1986).   The evidence of the nonmovant is to be believed

and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242,

---

in many courts. The standard for granting summary judgment remains unchanged. The language
of subdivision (a) continues to require that there be no genuine dispute as to any material fact and
that the movant be entitled to judgment as a matter of law. The amendments will not affect
continuing development of the decisional law construing and applying these phrases.

255 (1986).  The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  *Little v. Liquid Air Corp.*, 37 F.3d at 1075.  The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-248.  An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party.  *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby*, 477 U.S. at 248.  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted).

## II.  Fourth, Fifth, and Fourteenth Amendments

### A. Fourth Amendment Claim

Cunningham alleges that the Officers lacked reasonable suspicion and probable cause for the initial stop and that the subsequent search of his person for weapons violated his Fourth Amendment

rights.  According to Cunningham, the Officers were  not able to articulate their suspicions to him, thus this failure to articulate establishes a lack of reasonable suspicion.  In addition, Cunningham asserts in his Motion for Partial Summary Judgment that his car was in perfect operating condition. He further stated that "no one had notified him of the tail lights being out and that he inspected it the following day and found no mechanical defects."  Cunningham further contends that Officer Gradberg had no basis to detain him while requesting the presence of Officer Grimes for backup. Cunningham further alleges that Officer Grimes' search for weapons lacked probably cause.

The Fourth Amendment bestows the constitutional right upon a person to be free from unreasonable seizures of both his person and effects. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).  By its plain terms, the Fourth Amendment does not prohibit all searches and seizures—only those that are "unreasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990).  However, the law clearly provides that a law enforcement officer may lawfully stop and detain an individual to perform an investigation based on reasonable suspicion.  *Id.*; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).  The Constitution requires only a minimum level of objective justification, considering the totality of the circumstances, for an investigating officer's actions.  *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).  Justification for an investigative detention does not depend on whether the officer's suspicion that an offense may have been committed is ultimately proven to be confirmed or even whether the officer was more likely not correct in his suspicion.  *Texas v. Brown*, 460 U.S. 730, 742 (1983); *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000).

Traffic stops are limited seizures that are analyzed under the two-prong test of *Terry v. Ohio.* 392 U.S. 1, 9. (1968).  *See United States v. Jenson*, 462 F.3d 399, 403 (5th Cir. 2006).  Under *Terry*, in determining whether the stop was unreasonable, the Court must determine whether the stop was

justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference.  *Id.* at 1879.  For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  In the context of a traffic stop, Terry's first condition is satisfied "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation."  *Arizona v. Johnson*, 555 U.S. 323 (2009).

If the stop is justified, the next inquiry is "whether the officer's subsequent actions after he legitimately stopped the car were reasonably related to the circumstances that justified the stop, or to dispel[ ] his reasonable suspicion developed during the stop."  *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).  "Reasonableness requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement."  *Id.*  "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."  *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003).

In this case, Officer Gradberg testified in his affidavit that he observed Cunningham driving with a broken tail light at thirty miles per hour in a sixty mile per hour zone.  At the stop, Cunningham was informed of his tail light being out and at that time did not dispute this fact.  Instead, he stated "I had some work done on the rear end."  Furthermore, he never disputed driving well below the speed limit.  Rather, Cunningham stated in his unsworn affidavit that the maximum speed limit was 40-45 miles per hour "upon information and belief."  Cunningham's affidavit is not competent evidence, however, as it is unsigned and not notarized.  In addition, when Officer Grimes

arrived, he too informed Cunningham of the reason for the stop.  Cunningham did not dispute the Officers' claim at that time.  Cunningham now contends that if the Officers had a video recording of the stop, it would show that his tail light was not out.  Simple conjecture concerning hypothetical evidence is not enough to survive summary judgment.  Furthermore, Cunningham's denial does not destroy the Officers' reasonable suspicion. The uncontroverted evidence, corroborated by both testifying officers and the tape transcript established that Cunningham's tail light was out.  Officer Gradberg had a reasonable suspicion that a violation of the Texas traffic law had occurred.  Thus, the stop was justified and legitimate at the inception.

We turn now to the second inquiry – whether the officer's subsequent actions were reasonably related to the circumstances that justified the stop, or to dispel their reasonable suspicion developed during the stop.  The Court finds that the Officers' subsequent actions were justified to dispel their reasonable suspicion developed during the stop, as explained below.

After noticing Cunningham's broken tail light, Officer Gradberg followed Cunningham's car and called in his plates.  It was discovered that the car was registered out of Panola county–in Dallas, Texas.  Cunningham then pulled over into a church parking lot before Officer Gradberg engaged his lights.

Officer Gradberg followed Cunningham's car into the church parking lot.  Cunningham stated that his dogs were barking loudly, so he exited his vehicle to see why he was being "followed."   Cunningham was carrying a tape recorder and engaged it when Officer Gradberg approached his car.  Officer Gradberg was not aware that the conversation was being recorded.  According to the tape transcription, the conversation proceeded as follows:

Officer Gradberg:      Are we all right?

| | |
|---|---|
| Cunningham: | Yeah. Fine. |
| Officer Gradberg: | Okay.  Well, I didn't know if you're aware you've got a tail light out. |
| Cunningham: | I had some work done on the rear end. |
| Officer Gradberg: | Did you? |
| Cunningham: | Yeah. |
| Officer Gradberg: | Okay.  Are you with the newspaper? |
| Cunningham: | No. |
| Officer Gradberg: | I know sometimes, this time of night, they swap out.  You got a driver's license on you? |
| Cunningham: | Yeah. |
| Officer Gradberg: | Okay.  Can I see it? |
| Cunningham: | Am I being stopped? |
| Officer Gradberg: | Yes, sir.  I was just waiting for an open, lit place to do that, but the reason being, you've got a tail light out. |
| Cunningham: | Okay. |
| Officer Gradberg: | Is there a problem being stopped? |
| Cunningham: | Just wondering if I'm free to go or if I'm being stopped. |
| Officer Gradberg: | Do you got any criminal history or been to jail?  What's going on? |
| Cunningham: | I'm just driving.  I saw you kind of getting close on my tail.  I just– |
| Officer Gradberg: | You don't have any weapons on you or anything, do you, in your pocket? |

Officer Gradberg ran Cunningham's license and found that according to his license, he was a

resident of El Paso.  The computer search also revealed a concealed hand gun license for

Cunningham.  Officer Gradberg returned to Cunningham's car and asked him the following:

| | |
|---|---|
| Officer Gradberg: | You got a concealed handgun license? |
| Cunningham: | What does that have to do with a tail light? |
| Officer Gradberg: | By law, you're suppose to present that to an officer with your license, or you're breaking the law, and you can lose that license.  You need to be straight up, find out, what is the problem.  You don't have any criminal history.  What is the problem? |

Cunningham refused to answered Officer Gradberg's question responding instead that he "want[ed]

to go on his way."

Officer Gradberg stated in his affidavit that "in addition to making a very strange choice of

where he pulled off, and how he was driving, [Cunningham] had an emotional state that did not

match what he was doing or how he acted and talked, was far from his home in El Paso in the middle

of the night, and appeared to have a weapon (based on the CHL [concealed handgun license]) and

the refusal to answer questions about weapons."   Given Officer Gradberg's affidavit coupled with

the fact that Cunningham had exited his vehicle, seemed to have something in his pocket, and

refused to answer questions regarding his concealed handgun license, Officer Gradberg's suspicion

was reasonable.  It was reasonable for Officer Gradberg to assume Cunningham was armed and may

be dangerous.  It was reasonable for him to fear for his safety and to, therefore, request back-up.

Consequently, Officer Gradberg called Officer Grimes for assistance.  Officer Grimes arrived

approximately six minutes later.  When Officer Grimes arrived, Cunningham noted a "[c]onstable,

white Ram pickup, and a sheriff."  Cunningham asked Officer Grimes his name, badge number, and

who he worked for.   Officer Grimes dutifully answered each of Cunningham's questions and

proceeded to inform Cunningham that Officer Gradberg had stopped Cunningham because he had

a right tail light out.  After which Cunningham proceeded to correct Officer Grimes.

| | |
|---|---|
| Cunningham: | Actually, I was already here. |
| Officer Grimes: | Well, that's why he tried to make contact with you, run your license. Do you have a conceal to carry license? |
| Cunningham: | I'm sorry.  Could you explain what that has to do with a tail light? |
| Officer Grimes: | Well, when they give you that consent to carry license, you're supposed to tell us that.  They're supposed to teach you that in school. You're suppose to advise us that you do have a conceal to carry, and if you have a weapon, advise us where it is.  That's the law.  It's for our protection and yours.  We're not trying to jack you up.  We're just trying to do our job and get you on your way. |
| Cunningham: | I'm just saying, I've been out here for 10 or 15 minutes already.  I mean, look at it from my perspective.  It's a tail light.  He's asking me questions about, you know, weapons, criminal history.  I'd like to be on my way.  I did request a supervisor. |
| Officer Grimes: | I am the supervisor. |

Cunningham complained that Officer Gradberg was not dressed in "any sort of police uniform" and so it was not clear to him if he was approached by a "genuine law enforcement officer, an imposter, or some criminal looking for a victim."  Officer Gradberg testified in his affidavit that he was wearing a "constable's office uniform polo shirt, a belt badge and police weapons, driving a truck with Constable's Office signs on it and a police light rack."  Cunningham's explanation concerning a possible police imposter may justify his initial refusal to answer Officer Gradberg's questions. However, the dispute regarding Officer Gradberg's uniform is immaterial because it does not invalidate the reasonable suspicion for the initial stop.  Moreover, by the time Officer Grimes arrived, there was no doubt that the officers were legitimate law enforcement officers.  Cunningham stated in his Motion for Partial Summary Judgment that Officer Grimes arrived in a "clearly marked police vehicle, responded with his name and badge number."  Yet, even after Officer Grimes' answers and explanations, Cunningham continued to deflect all questions.

| | |
|---|---|
| Cunningham: | I'm not even sure where I really am right now. |
| Officer Grimes: | Are you still living in El Paso? That's what's on your DL. |
| Cunningham: | I know.  That's on my driver's license. |
| Officer Grimes: | Okay. Are you still living in El Paso?  Are you living here now? Where are you living now? |
| Cunningham: | I'd like to be on my way.  Am I free to go? |
| Officer Grimes: | Why are you being so evasive, Mr. Cunningham? |
| Cunningham: | I'm not being evasive, I'm being direct.  It's late. I'd like to be on my way. |
| Officer Grimes: | What is your present address? |
| Cunningham: | I don't see what that has to do with– |
| Officer Grimes: | That has everything to do with it, Mr. Cunningham.  As soon as you answer our questions, and if he wants to write you a ticket or not, and if he so chooses to do that or not, then we'll let you go. |
| Cunningham: | I'd like to be given a ticket or be sent on my way, please. |
| Officer Grimes: | Okay.  That'd be fine.  Do you have any weapons in your car? |
| Cunningham: | No, sir. I'm not here to answer any questions or be interrogated, I'd just like to be on my way. |

Cunningham continued to be indirect.  The computer search revealed that Cunningham had a concealed handgun license yet he failed to produce the license or to answer whether or not he had a weapon.  The computer search revealed different addresses for Cunningham.  Yet, Cunningham also refused to answer questions regarding his address, stating instead that the Officers had his license and the address is printed on it.  Cunningham's unwillingness to verify his address coupled with his failure to answer questions concerning his concealed handgun license aroused  suspicion and likewise led to more questions.  The Officers' increasing suspicions were also fueled by the fact that Cunningham continued to answer their questions with questions of his own.

Officer Grimes' testified in his affidavit that Cunningham behavior was unusual and his "evasive answers to questions did not create any reassurance."  Furthermore, Cunningham's behavior did not dispel his suspicions.  As a result, Officer Grimes did a pat-down of Cunningham's pockets and waist band for weapons.  Officer Grimes testified that "the search was not aimed at anything but weapons, specifically firearms and was not even used as an excuse to look for drugs."  He also noted that the pat-own did not locate the tape recorder that Cunningham was carrying.  He further attested that "a reasonable police officer dealing with someone who might be armed and shows emotional state did not add up, would take an extra moment or two to make sure everything is ok, especially in the middle of the night on a drug corridor."

The courts "must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *Brigham,* 382 F.3d at 507.  Both Officers were able to point to specific and articulable facts which taken together with rational inference from those facts, reasonably warrant the search and seizure.  The questions asked were

reasonable.  There were no evidence suggesting that the questions were asked to obtain an arrest nor

were they a pretext to search for drugs.  There was no search of Cunningham's vehicle only a pat-

down of his person for weapons.  Once the search revealed no weapons, Cunningham was released.

The search was reasonable and lawful.  Accordingly, the Court finds that Officers had at least a

minimal level of objective justification for the *Terry* stop.  Therefore, the stop of the vehicle and

subsequent search of Cunningham were objectively reasonable in light of the totality of the

circumstances and clearly established law.

### B.  Fifth Amendment Claim

Cunningham asserts that he has a right to be free from being questioned by the Officers and

that his Fifth and Fourteenth Amendment rights were violated when the Officers questioned him and

conditioned his release on answering their questions.

In *Miranda v. Arizona*, the Supreme Court established a procedural mechanism designed to

safeguard the exercise of the Fifth Amendment privilege against self-incrimination by requiring law

enforcement officials to inform the suspect of certain rights before questioning a suspect in custody.

384 U.S. 436, 467-73 (1966).  These *Miranda* warnings are required only when a suspect is both in

custody and subjected to interrogation.  *Id* at 477-78.  "Custody" for *Miranda* purposes means the

deprivation of freedom of action in any significant way.  *Id*. at 444.

In *Berkemer*, the Supreme Court held that roadside questioning of a motorist detained

pursuant to a routine traffic stop does not amount to "custodial interrogation." *Berkemer v. McCarty*,

468 U.S. 420, 442 (1984).  The motorist is detained briefly and is usually required to answer

questions.  However, such pressures to answer questions "do not sufficiently impair the detainee's

exercise of his privilege against self-incrimination to require that he be warned of his constitutional

rights." *Id.*  The Supreme Court articulated two major reasons for its holding.  First, a motorist is not in custody because of his own subjective impression of the stop; he expects that a routine traffic stop is temporary and brief.  *Id.* at 437-38.  Second, the circumstances associated with a typical traffic stop are not such that the motorist feels completely at the mercy of the police; for example, the public setting for the stop and the fact that only one or two officers were present.  *Id*. at 438-39.

Furthermore, The Fifth Circuit has held that there is no constitutional impediment to a law enforcement officer's request to examine a driver's license and vehicle registration or rental papers during a traffic stop and to run a computer check on both.  *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004).  Furthermore, an officer may also ask about the purpose and itinerary of a driver's trip during the traffic stop.  *Id*.  Such questions may efficiently determine whether a traffic violation has taken place, and if so, whether a citation or warning should be issued or an arrest made.  All these inquiries are within the scope of investigation attendant to the traffic stop.  *Id.*

The Court finds that Cunningham was not in custody, for *Miranda* purposes, at the time he was questioned.  Cunningham was neither arrested nor was his freedom restricted to a degree equivalent with an arrest.  Cunningham was not handcuffed and he stated in his response that "Defendant officer never made any attempt to restrain [him] . . . did not order [him] to put his hands on his head, lay on the ground . . . "  Moreover, the Officers' questions were permissible and lawful as provided by the cited authority.  For these reasons, Cunningham's Fifth Amendment claim fails.

*C. Fourteenth Amendment Claim*

Cunningham generally alleges violation of the Fourteenth Amendment without stating whether his claims against the Officers are asserted under the equal protection clause or due process clause.  Regardless, both are without merit and should be dismissed.

The Equal Protection Clause directs that "persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Id.* Further, the party must demonstrate that the purposeful discrimination motivating the state action caused the complained-of injury. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-307 (5th Cir. 1997). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.*

Cunningham has presented no competent summary judgment evidence to support a viable Equal Protection claim. There is no evidence that the Officers discriminated against him in violation of the Equal Protection Clause. The Officers' affidavits stated they took no action with respect to Cunningham's race. The tape recording of the stop evinced no references to race. Cunningham stated his knowledge of discrimination in Texas by stating that he is "aware of the recent history of other nearby locations such as Jasper, T[X] where a James Byrd, Jr. was dragged to death by several racist individuals in a hate crime . . . the substantial presence of 'Sundown Towns" in East Texas, such as Vidor, T[X], where it is generally regarded as unsafe for black motorist to drive after dark and are havens for subversive organizations such as the Ku Klux Klan . . . [and] the widespread practice of racial profiling by racist law enforcement officers targeting young black males for police harassment, commonly known as 'driving while black' or 'DWB.'"

His awareness of discrimination and the delineation of these unfortunate events are immaterial to the case at hand. Here, Cunningham fails to come forward with evidence that the

Officers' actions were intentionally or purposefully discriminating due to his race.  Without more, Cunningham's mere belief and negative perception of the social conditions in Texas are not enough to establish §1983 liability against the Officers.

Cunningham also has no valid claims under the Fourteenth Amendment's Due Process Clause.  It is the Fourth Amendment that establishes the procedural protections applicable to searches and seizures. The Due Process Clause in the Fourteenth Amendment does not require any additional procedures beyond those already mandated by the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394 (U.S. 1989).  Cunningham points to no process he was denied. Accordingly, Cunningham's Fourteenth Amendment claims should be dismissed.

## III.  Civil Conspiracy

Cunningham alleges that Officers engaged in a conspiracy to deprive him of his constitutional rights.  Specifically, Cunningham asserts that the Officers "imped, hindered, defeated, and obstructed his 4th, 5th, and 14th Amendment rights to the United States Constitution."  Cunningham further alleges that the Officers conspired to "harass, detain, falsely imprison the Plaintiff, assault, and sexually assault" him.

Cunningham did not specify a particular federal law being violated.  As the Court construes his Amended Complaint, Cunningham appears to make claims under 42 U.S.C.S. § 1985(3). Section 1985(3) prohibits conspiracies to deprive any person of equal protection of the laws.  To state a claim under §1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States.  *Hilliard*

*v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).   Additionally, the conspiracy must also have a racially based animus.   *Id*. at 653.

As stated above, Cunningham provided no evidence establishing a constitutional violation. Here, Cunningham simply recounts the elements of a §1985(3) without presenting factual allegations of specific intent by the Officers to deprive him of his constitutional rights.   There is no evidence establishing that the Officers' actions were motivated by racial animus.   There were no factual allegations from which one could conclude that any race-based conspiracy existed.   The record shows no racial remarks from the Officers and no actions by the Officers that were racially motivated.   At all times, the Officers addressed Cunningham as "Mr. Cunningham" and "sir."   Their conduct toward him was professional and respectful.

The only racial animus comes not from the Officers but rather from Cunningham. Specifically, in Cunningham's pleadings, he stated that the Officers were "nothing more than racist bigots with badges" and that "Plaintiff was guilty of nothing more than driving while black and perhaps contempt of cop."   His "contempt of cop" is evident when he states the following:

> "[The Officers] saw the Plaintiff as a target of opportunity as a lone black motorist on a deserted road at night, and they decided to take the opportunity to harass and humiliate the Plaintiff.   They saw a young black male doing nothing more than driving a vehicle and decided that some criminal activity must be afoot, since in their minds, that is all young black males do is commit crimes and ferry drugs in their limited estimation.   Only when the Plaintiff displayed his military ID did they relent as they couldn't possibly conceive the thought of a young black male doing something other than selling drugs, such as going to college, leading soldiers, or defending his country."

Cunningham's allegations are nothing more than contemptuous criticism of law enforcement. A plaintiff asserting a § 1985 claim must plead the operative facts upon which his claim is based. *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987).   Moreover, a plaintiff must plead the claim

with some specificity; conclusory or bald allegations are simply inadequate.  *Id*.  Cunningham's

summary judgment evidence is replete with unsubstantiated allegations.  Taken together, they

express no single constitution violation but only a series of contemptuous pronouncements, adversial

conclusions, and unsubstantiated allegations.  Accordingly, Cunningham's civil conspiracy claims

against the Officers should be dismissed.

## IV.  State Law Claims

Cunningham alleges that the Officers' conduct constituted assault and battery, sexual assault

and battery, false imprisonment, and intentional infliction of emotion distress.  He plead the

following for each claim:

> The foregoing acts, errors, and omissions of Defendants Grimes and
> Gradberg constitute multiple violations of Cunningham's rights under the 4th, 5th
> and 14th amendments to the constitution.

> As a result of each and every one of the Defendants' willful or knowing
> violations of Cunningham's rights under the US Constitution and amendments,
> Cunningham suffered actual damages and have deprived Cunningham of
> his rights under the US Constitution and amendments to it.

Additionally, Cunningham plead  that "Officer Grimes groping of [Cunningham's] buttocks, groin,

and crotch in the course of an illegal frisk constituted assault and battery, sexual assault and battery,

and another attempt to intentionally inflict emotional distress upon [Cunningham]."  Cunningham

re-alleges the state law claims in his response to the Motion but presented no further summary

judgment evidence to support these claims.

### A.  Assault and Battery

Under Texas law, "[a] person commits an assault [and battery] if he (1) intentionally,

knowingly, or recklessly causes bodily injury to another . . . ; (2) intentionally or knowingly threatens

another with imminent bodily injury . . . ; or (3) intentionally or knowingly causes physical contact

with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.  TEX. PENAL CODE § 22.01.  *See Forbes v. Lanzl*, 9 S.W.3d 895, 900 (Tex. App. -- Austin 2000, pet. denied) (citing section 22.01(a) as the standard for assault in a civil case); *Childers v. A.S.*, 909 S.W.2d 282, 292-93 (Tex. App. -- Fort Worth 1995, no writ) (citing section 22.01(a) as the standard for battery in a civil case).

Texas courts have proclaimed that a police officer is entitled to qualified immunity from intentional tort liability "if he is acting in good faith within the course and scope of his authority, and performing discretionary functions." *Vasquez v. Hernandez*, 844 S.W.2d 802, 803 (Tex. App.- San Antonio 1992, writ dism'd w.o.j.).  Moreover, any "activity that would otherwise subject a person to liability in tort does not constitute tortuous conduct if [the] actor is privileged [or justified] to engage in that conduct." *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988), cert. denied, 493 U.S. 822 (1989)).  In other words, "a privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortuous if committed by someone not having those duties." *Garza v. United States*, 881 F. Supp. 1099, 1106 (S.D. Tex. 1995).

Here, the Officers had probable cause to search for weapons.  The questions regarding Cunningham's concealed handgun license requires merely a "yes" or "no."  Neither answer would have been self-incriminating.  As Officer Grimes stated "It's a simple question.  It's not against the law to have it, but we need to know that when we make contact."  Officer Grimes further stated that "If you say, yes, sir, I have a gun in the glove box, that's the end of it.  But you're being evasive makes us suspicious."  Furthermore, the evidence showed that the Officers did not want to do a search for weapons.  Rather, the Officers used a less intrusive means by asking Cunningham

questions as a means to dispel their suspicions.  Yet, Cunningham continued to be evasive.  As a result, a pat-down for weapons was conducted.  When it was revealed there were no weapons, Cunningham was free to go.  The Officers were acting in good-faith and within the course and scope of their authority when they conducted a pat-down of Cunningham's person for weapons.  The Officer' actions were standard and lawful police conduct.  There was no unnecessary and excessive force used against Cunningham, and he likewise asserted that no force was used.  The evidence places the Officer's action squarely within the course of their official duty.  Consequently, the Officers' actions are privileged and qualified and do not constitute an assault and battery.

### B.  Sexual Assault and Battery

A person commits an offense of a sexual assault and battery when the person (1) intentionally or knowingly: (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.  TEX. PENAL CODE § 22.011.

Clearly, Cunningham's claim of sexual assault and battery warrants no discussion.  Simply pleading that the "buttocks, groin, and crotch" were allegedly "groped" does not by itself, without more, constitute sexual assault and battery.  Cunningham's claims for sexual assault and battery against Defendants are without merit and should be dismissed as frivolous.

### C.  False Imprisonment

Under Texas law, liability for false imprisonment will attach when: (1) there is a willful detention of a person; (2) without his or her consent; and (3) without the authority of law.  *Sears,*

*Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).  No action will lie against an officer for unlawful restraint, false arrest, or false imprisonment where probable cause is shown to have existed, as the existence of probable cause provides the authority to arrest.  *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998); *see also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' . . . false imprisonment . . . requires a showing of no probable cause.")).

The Officers as a constable and deputy of Panola County act in their official capacity under the authority of the law.  As the Court has established probable cause for the *Terry* search and seizure, Cunningham's claim for false imprisonment should be dismissed.

### D.  *Intentional Infliction of Emotional Distress*

To recover damages for intentional infliction of emotional distress, Cunningham must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the Officers caused Cunningham emotional distress; and (4) the resulting emotional distress was severe.  *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)). "In addition, [a] claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort.'" *Id*. at 68  "Accordingly, a claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct."  *Id*.

Cunningham provided no summary judgment evidence to support his claim of intentional infliction of emotional distress.  The Officers' conduct during the stop was not extreme and outrageous.  Rather the Officers' conduct was routine and normal.  There is no evidence that the Officers acted intentionally or recklessly to cause Cunningham emotional distress.  Moreover,

Cunningham pleaded no facts and provided no evidence to establish that he suffered from severe emotional distress.  Thus, Cunningham's claim of intentional infliction of emotional distress is ripe for summary judgment.

RECOMMENDATION

Based on the foregoing discussion and analysis, it is hereby recommended that Cunningham's civil rights complaint and pendant state law claims be dismissed with prejudice.  It is recommended that Defendant's Motion for Summary Judgment (doc. #22) be granted and Cunningham's Partial Summary Judgment (doc. #32) be denied.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) *(en banc).*

So **ORDERED** and **SIGNED** this **8**   day of   **May, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE